John–Tyronne MARTIN, also known as
Michael Chase, Plaintiff–Appellant,

v.

Darlene M. DAVIES and J. Alexander,
Defendants–Appellees.

No. 88–2950.

United States Court of Appeals,
Seventh Circuit.

Argued July 11, 1990.

Decided Nov. 5, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 18, 1990.

Don Sampen, William A. Kummerer,
Martin, Craig, Chester & Sonnenschein,
Chicago, Ill., for plaintiff-appellant.

John–Tyronne Martin, Pontiac, Ill., pro se.

Daniel P. Slayden, Asst. State's Atty., Cecil A. Partee, Paula M. Carstensen, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Plaintiff-appellant, John–Tyronne Martin, appeals the district court's dismissal of his amended complaint for damages and equitable relief brought under 42 U.S.C. § 1983 against defendants-appellees Darlene Davies and Verlinda Alexander, two clerks at the Cook County Jail law library. 694 F.Supp. 528. The district court dismissed the complaint for failure to state claims upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), and because some of Martin's claims were governed by the terms of the consent decree in *Duran v. Elrod*, No. 74 C 2949 (N.D.Ill. 4/9/82), and could only be resolved by a contempt action to enforce that decree. We affirm the judgment of the district court.

## I. Background

At the time he filed this lawsuit, on October 16, 1987, Martin was a pre-trial detainee at the Cook County Jail in Chicago. Notably, however, his reply brief concedes that he has since been transferred to the Joliet Correctional Center.

Martin's complaint and amended complaint, filed *pro se*, alleged numerous civil rights violations, all of which concerned his right of access to the courts. His original complaint alleged (1) that defendants would not notarize legal documents that he prepared without reading them; (2) that Cook County jail personnel denied him envelopes and stamps for legal mail; (3) that Davies had instituted a policy at the library preventing pre-trial detainees from assisting each other in the library; and, (4) that he had inadequate access to the jail law library.

In an order entered October 30, 1987, the district court dismissed all but the third claim. Specifically, the court found that claims of inadequate access to the jail law library were covered by the terms of the consent decree in *Duran* and that violation of the decree could only be remedied by a contempt proceeding in that action. The court also found that under both federal and Illinois law, an unsworn declaration under penalty of perjury may substitute for a declaration subscribed and sworn before a notary public. Furthermore, the court held that the allegation regarding denial of stamps and envelopes did not state that it resulted in any prejudice to potential or pending litigation, and thus it failed to state a claim.

Martin filed an amended complaint, containing thirteen pages of allegations. The events which form the factual basis of Martin's amended complaint occurred during July through October 1987. The complaint is short on specifics such as dates and supporting facts; however, the following factual allegations are apparent.

Martin was arrested in April 1987, and was charged with at least five offenses. One of these was a misdemeanor trespass charge in Skokie, Illinois. Martin apparently chose to proceed *pro se* on the trespass charge, as well as on the other charges—three theft counts and an extradition case.

Martin claims that from July through the beginning of October 1987, he was only permitted access to the law library for six to seven hours. He claims that in September and October, as a result of a "conspiracy" by the defendants, library access was limited because he talked in the library, sought assistance from other pre-trial detainees, and filed a grievance against defendants. He states that in September (date unspecified), he had legal documents that he never mailed because defendants refused to give him envelopes and stamps, again due to his talking and his attempt to get assistance from others. In October (date unspecified, but prior to the fifth), Martin took a legal document (a subpoena) to defendant Alexander for notarization. She would not notarize the document without reading it first. She also would not give him envelopes and stamps because he

had not properly prepared the materials. Martin then went into defendant Davies' office. After some discussion and a verbal altercation, Davies notarized the legal papers, gave him envelopes, but not stamps. On October 5, 1987, Martin filed a grievance against defendants. Defendants' response to the grievance, attached to Martin's original complaint, indicated that the reason stamps were not given to Martin was because his mail was destined for courts which were part of the jail's messenger route. Defendants' response denied that there was a no talking rule in the library; rather there is a "no loud talking" policy.

Martin requested to use the law library on a daily basis, but he claims the defendants' conspiracy has been to refuse him access in retaliation for his filing the previously mentioned grievance. Martin also complains that defendants would not allow him access to the library until three days before a court appearance, rather than on an "as needed" basis, thus denying him access to the courts. Martin claims that defendants' policies and conspiracy forced him to plead guilty to the misdemeanor trespass charge in Skokie. Martin also claims that defendants have converted law library materials to their own use.

Martin alleges he was damaged by defendants' actions in that he was required to plead guilty to misdemeanor trespass, could not defend his other criminal charges, and could not prosecute his federal lawsuits by virtue of the denial of access to library facilities.

## II. Analysis

Prison officials have an affirmative duty to provide inmates with reasonable access to courts, which includes providing access to adequate libraries (or counsel). *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988). The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Nonetheless, reasonable access does not mean unlimited access. *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir.1987).

Martin's amended complaint seeks equitable relief in the way of injunction and declaratory relief to restrain defendants from continuing their alleged policies which deny him access to the courts and to the law library. Martin also seeks damages, both actual and punitive, from defendants as redress for defendants' library policies, which he alleges caused his inability to defend and prosecute various court cases. The claims raised in Martin's complaint can be summarized as follows:

1. defendants refused to notarize legal documents, copy, give stamps and envelopes, or mail legal documents without reading them, altering them, and censoring them;

2. defendants refused Martin's request to use the law library on an "as needed" basis which interfered in his preparation of his defense in his pending criminal claims, as well as his prosecution of several civil actions, and he had to plead guilty to a trespass charge;

3. defendants refused to allow Martin to receive legal assistance from other inmates by means of a "no-talking" policy;

4. defendants converted legal material requisitioned for plaintiff's use to their personal use, while denying them for use by Martin;

5. defendants practice law without licenses;

6. defendants conspired to deny Martin access to the courts as retaliation for his filing of administrative grievances against them by denying him library time and legal materials.

These claims can be divided into two groups: those involving access to the courts from the denial of access to the jail law library and those involving access to the courts resulting from the denial of supplies and services. We address each in turn.

## A. Denial of Access to the Library.

Martin seeks equitable relief against defendants to restrain them in their alleged practices which deny him access to the Cook County Jail law library. He also claims monetary damages as a result of his having to plead guilty to a misdemeanor charge and of his inability to prepare other cases, all due to lack of library time. Judge Bua dismissed these claims because they were governed by the consent decree in *Duran v. Elrod*, No. 74 C 2949 (N.D.Ill. 4/9/82), and could be enforced only through a contempt action brought under that decree. Martin contends that he is not a member of the class governed by the *Duran* decree, and that even if he is, dismissal was not appropriate since *Duran* addresses only equitable claims, and he raises damage claims in addition to his equitable claims. Even with regard to his equitable claims, he suggests his are so particularized that they should be considered independent of the *Duran* decree. *See Hall v. Elrod*, No. 74 C 2949, memorandum order at 1 (N.D.Ill. 1/21/85) (individual claims which go beyond terms of *Duran* should be heard separately under § 1983).

### 1. Equitable relief.

■ Although Martin was not in Cook County Jail at the time of the *Duran* decree (he arrived in 1987; *Duran* was finalized in 1982), he is clearly a member of the *Duran* class. The general rule is that a "judgment or decree among parties to a lawsuit resolves issues as among them, but it does not include the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 754, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989). There are exceptions to this rule, which include class actions. *Id.* at 2184 n. 2. Because the *Duran* class action involved the rights of pre-trial detainees and because the consent decree is continuing in nature, it binds people who were not direct parties to it. This court has held by inference that plaintiffs like Martin are bound by the decree. *See Duran v. Elrod*, 760 F.2d 756, 760 (7th Cir. 1985) (noting in enforcement and modification action that "the current crop of pre-tri-

al detainees was not in the jail when the decree was signed...."). The "construction of a consent decree is a matter of contract interpretation...." *Ferrell v. Pierce*, 743 F.2d 454, 461 (7th Cir.1984). There would be little point in construing the *Duran* decree as binding only those pre-trial detainees who were in custody on the day the decree was signed. Obviously, the group's composition changes every day. The parties could not have intended to so limit the agreement, as evidenced by the provision that "[j]urisdiction of this cause is hereby specifically retained by the court to enter further orders necessary or appropriate to enforce the terms of this order."

■ Appellees argue, however, that if Martin is a member of the *Duran* class, his claims for equitable relief are moot by virtue of his transfer to Joliet Correctional Center. Martin concedes that he is no longer at Cook County, yet urges this court to address his equitable claims because they are "capable of repetition yet evading review." We agree with the appellees. Because Martin is no longer residing at Cook County Jail, enjoining defendants' actions against him would be of no effect, and therefore, his equitable claims against defendants are moot. *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396–97 (7th Cir.1990). Furthermore, as Judge Easterbrook pointed out in his dissent in *DeMallory v. Cullen*, 855 F.2d 442, 449–50 (7th Cir.1988) (dissenting opinion), "*Weinstein v. Bradford*, 423 U.S. 147, 149 [96 S.Ct. 347, 348, 46 L.Ed.2d 350] (1975), requires a 'demonstrated probability' that the same party will again be subject to the challenged action, and nothing has been demonstrated ... here." *DeMallory*, 855 F.2d at 450. The most Martin argues is that there is nothing in the record to show that he *will not* end up back at Cook County and then be subject to the same alleged wrongs. That will not do. If and when he returns he can enforce the decree if breached, but not until.

### 2. Damage claims involving access to the library.

Martin asserts that his damage claims regarding denial of access to the jail law

library are not governed by the *Duran* decree. The *Duran* decree does not address damage claims. In fact, by its terms, it limits itself to equitable claims. *See Duran, supra,* decree at 15 ("This Order ... constitutes a final disposition of this litigation as to all defendants with respect to the *injunctive and declaratory* relief claimed by plaintiffs and the class.").

▇ To the extent that Martin seeks damages as a result of the denial of access to the library, the district court's dismissal of the claims because they were governed by *Duran* was erroneous. Nonetheless, we affirm the district court because Martin's claims of denial of access to the courts resulting from insufficient library time fail, as a matter of law, to state constitutional violations. Martin's complaint states that the denial of access to the library resulted in his being unable to prepare for many of his state court defenses and in his having to plead guilty to his misdemeanor trespass charge. However, beyond this, the complaint offers no specific facts to support these allegations—no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won. *Bruscino v. Carlson,* 854 F.2d 162, 167 (7th Cir.1988). Martin's conclusory allegations of prejudice fail to meet any standard of sufficiency. *See Howland v. Kilquist,* 833 F.2d 639, 643 (7th Cir. 1987). It is unclear to us how a denial of access to the library would cause Martin to plead guilty to a charge for which he was not guilty. He does not now claim that he was, in fact, innocent on that charge. Finally, as to any other instances of denial of access to the courts due to lack of library time, Martin cites no facts in support of his claim that he was not able to prepare for his court appearances. In addition, Martin proceeded *pro se* by his own choice in the defense of his criminal charges. Having assistance of appointed counsel would likely have been a much more efficient alternative. Simply because a defendant has refused counsel does not entitle him to limitless access to libraries. *United States ex rel. George v. Lane,* 718 F.2d 226 (7th Cir.1983). *See United States v. Moya-Go-*

*mez,* 860 F.2d 706, 743 (7th Cir.1988) (reaffirming *George*).

▇ Martin's amended complaint fails to allege specific damages which resulted from denial of library time. Furthermore, Martin's complaint concedes that he spent at least seven hours in the library during the period in question. Thus, Martin does not receive the benefit of this court's recent decision in *DeMallory v. Cullen,* 855 F.2d 442, 449 (7th Cir.1988), in which a divided panel held that when a prisoner alleges "a substantial and continuous limit on ... access to legal materials or counsel, the complaint carries an inherent allegation of prejudice." The plaintiffs in *DeMallory* had *no* access to the library and faced other restrictions to legal assistance over a ten-year period. Here, Martin concedes he had access to the library at Cook County Jail, although not as much as he would have liked. Under such circumstances, this court has consistently required plaintiffs to make "specific allegations suggesting how his claimed inability to use the law library resulted in his being denied 'meaningful' access to the courts and, hence, his constitutional rights." *Hossman v. Spradlin,* 812 F.2d 1019, 1021 (7th Cir.1987); *Bruscino,* 854 F.2d at 167; *Howland,* 833 F.2d at 642–43. *See DeMallory,* 855 F.2d at 451 (dissenting opinion of Judge Easterbrook). Martin's claims regarding lack of access to the jail law library are insufficient to state claims for relief.

*B. Access to Materials.*

▇ The district court dismissed Martin's remaining allegations for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). We conduct *de novo* review of the district court's decision. Dismissals under Rule 12(b)(6) should be upheld only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DeMallory,* 855 F.2d at 445 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957)). The allegations in Martin's amended complaint must

be taken as true for purposes of Rule 12(b)(6). *Id.* at 445.

Martin claims that defendants conspired to deprive him of library access and services in retaliation for filing a grievance against them; would not notarize his legal papers without reading them; would not give him stamps, envelopes and other supplies on various occasions; and, would not photocopy documents. The district court found that Martin had not made a sufficient allegation of prejudice on these claims. Plaintiffs must plead prejudice to state a claim when challenging minor interferences with access to the courts, such as these. *DeMallory*, 855 F.2d at 448–49; *Hossman*, 812 F.2d at 1021–22. Here, Martin alleges no facts which show that any of the above acts, if they occurred, deprived him of meaningful access to the courts. *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496.

First, Martin's retaliation charge makes no sense in light of his other factual allegations. Martin filed his grievance on October 5, 1987; however, his charges of denial of library access occur primarily in the preceding months. Second, Martin concedes that defendants eventually notarized the subpoena at issue on the day in question. Furthermore, as Judge Bua pointed out in his initial order in this case, Martin was not required to have his other legal papers notarized under 28 U.S.C. § 1746 and Illinois Revised Statutes, ch. 110, ¶ 1–109. Martin's complaint also concedes that he received the envelopes he requested. As to the receipt of stamps, the defendants' response to his grievance claim, which is an attachment to Martin's complaint, explains that the reason stamps are not given to many inmates at the Cook County Jail is that the jail operates a messenger service to the local courts. Stamps are given to those inmates who need to mail legal documents to locales that are not on the route. Although Martin's attorneys claim that Martin alleged repeated acts by defendants in these areas, we are not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim...." *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988). Here, the fact that Martin concedes that the defendants eventually complied with his requests undermines the validity of his claims and casts conclusive doubt over his ability to prove them. The same applies to Martin's allegation that defendants deprive inmates of the opportunity to confer with one another in the library. The response to the grievance states that there is a "quiet talking" policy in the library. This undercuts Martin's ability to prove any claim regarding his ability to confer with jailhouse lawyers. Martin's claims that defendants converted supplies to their own use and practiced law without a license are unsupported and frivolous.

In conclusion, we find that Martin's equitable claims against defendants were rendered moot by his transfer out of Cook County Jail. Martin's claims of denial of access to the courts fail to allege sufficient prejudice to state constitutional deprivations. As so modified, the judgment of the district court is

AFFIRMED.