51 F.3d 275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William A. CHAVIS, Plaintiff/Appellant,
v.
J.W. FAIRMAN, Warden/Director, O. Sheahan, Cook County
Sheriff and Superintendent Russell, of Division 5,
Defendants/Appellees.
 No. 94-1503.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 6, 1995.*
Decided April 6, 1995.
 
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 William A. Chavis appeals the dismissal of his suit, brought under 42 U.S.C. Sec. 1983, for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Chavis, an inmate filing this suit pro se, asserts that the conditions at Cook County Jail while he was a pre-trial detainee violated his constitutional rights under the First, Eighth and Fourteenth Amendments. For the reasons stated in the attached order, we AFFIRM the district court's judgment.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 William A. Chavis, Plaintiff,
 
 
 3
 v.
 
 
 4
 J.W. Fairman, et al., Defendants.
 
 Case No. 92 C 7490
 Docketed Feb. 22, 1994
 MEMORANDUM OPINION AND ORDER
 MARVIN E. ASPEN, District Judge:
 
 5
 Plaintiff William A. Chavis ("Chavis") brings this pro se action under 42 U.S.C. Sec. 1983 against defendants J.W. Fairman, Michael Sheahan, and Carl Russell (collectively "defendants"). Chavis alleges that defendants violated his First, Eighth, and Fourteenth Amendment rights as a result of their deliberate indifference to certain conditions of his confinement. Presently before us is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] For the following reasons, we grant the motion.
 
 I. Motion to Dismiss Standard
 
 6
 A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). As with all motions to dismiss, we will take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." Balabanos v. North Am. Inv. Group, Ltd., 708 F.Supp. 1488, 1491, n. 1 (N.D.Ill.1988). Moreover, because Chavis is proceeding pro se, we will construe his pleadings more liberally than those submitted by attorneys. Haines v. Kerner, 404 U.S. 509, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).
 
 II. Factual Background
 
 7
 For approximately four and a half months, Chavis was a pretrial detainee confined at the Cook County Jail. Chavis' litany of claims can best be summarized as follows:
 
 
 8
 (1) he received inadequate medical and dental care;
 
 
 9
 (2) the toilet facilities at the jail were filthy;
 
 
 10
 (3) he had inadequate lighting;
 
 
 11
 (4) he was forced to eat on the dining room floor where bugs flew around his head and mice could be seen at night;
 
 
 12
 (5) he did not receive adequate portions of food and sometimes the food was spoiled;
 
 
 13
 (6) he was forced to sleep on a mattress on the floor of his unit's dining room for over a year because the jail was overcrowded (there were 106 inmates in a unit that was built to house 40, and 109 inmates in another unit that was built to house 44);
 
 
 14
 (7) as a result of numerous gunshot wounds in his leg and hip, he suffered leg and hip pain from sleeping on a mattress on the floor;
 
 
 15
 (8) he slept close to drug addicts with infected track marks on their bodies and near inmates with communicable diseases;
 
 
 16
 (9) he only received a clean uniform once every three weeks and was threatened with abuse if he washed his uniform himself;
 
 
 17
 (10) he received inadequate showers (only one of the jail's four showers was functional);
 
 
 18
 (11) he was only allowed outdoor exercise once a month;
 
 
 19
 (12) due to the overcrowding, it was difficult to sit in the recreation room to read or watch television;
 
 
 20
 (13) he was denied religious services because the officers in charge never selected him to go;
 
 
 21
 (14) he was threatened for complaining to other inmates about the conditions at the jail;
 
 
 22
 (15) officers from the county sheriff's office kicked and stepped on his leg and hit him in the head several times causing him to go to the medical facility for pain pills;
 
 
 23
 (16) he was subjected to verbal abuse from members of the county sheriff's office.
 
 
 24
 After filing a grievance through the prisoner grievance system, only to be told that there was nothing the committee could do about the conditions of which he complained, Chavis filed this Sec. 1983 action seeking declaratory and injunctive relief as well as monetary damages.[2] In his complaint, Chavis explicitly states that he is suing defendants in their official capacity and charges that defendants are responsible for the actions of county officers who kicked and beat him.
 
 III. Discussion
 
 25
 Defendants seek to dismiss plaintiff's complaint in its entirety on the grounds that Chavis has not stated any claims upon which relief can be granted. We address Chavis' allegations in turn.
 
 A. Equitable Relief
 
 26
 To begin with, defendants contend that Chavis' equitable claims are moot under the class action consent decree that was entered in Duran v. Elrod, No. 74 C 2949 (N.D.Ill. April 9, 1982), another case between pretrial detainees and the Cook County Jail. Indeed, Chavis' requests for declaratory and injunctive relief against defendants are governed by the terms of the Duran consent decree. The Duran class includes all Cook County pretrial detainees and the consent decree mandated renovation of the county jail facilities, increased staff members, improved food services, provision of personal hygiene supplies, increased access to the law library, and more physical exercise periods and visitation hours. Duran v. Elrod, 713 F.2d 292, 293 (7th Cir.1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 143 (1984).
 
 
 27
 Normally, a judgment or decree resolves issues among parties to a lawsuit and does not affect parties outside the proceedings. However, class actions are an exception to this rule. Martin v. Wilks, 490 U.S. 755, 761-62, 109 S.Ct. 2180, 2184, 104 L.Ed.2d 835 (1989). Because the Duran class action involved rights of pretrial detainees and the consent decree is continuing in nature, Chavis is a member of that class even though he was not present in the jail when the decree was ordered. See Martin v. Davies, 917 F.2d 336, 339 (7th Cir.1990), cert. denied, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991).
 
 
 28
 Equitable claims arising out of violations of a contempt decree must be addressed through contempt proceedings before the supervising court. Martin, 917 F.2d at 339. In this instance, Judge Milton I. Shadur oversees the Duran consent decree, not this Court. Accordingly, Chavis' equitable claims are not properly before us.[3]
 
 B. Damage Claims
 
 29
 Unlike equitable claims, the Duran consent decree does not bar Sec. 1983 damages claims that derive from conditions of confinement for pretrial detainees in the Cook County Jail. Martin, 917 F.2d at 340.[4] We turn, then, to the various flaws defendants have identified in plaintiff's complaint.
 
 
 30
 1. Inadequate Medical and Dental Care, Lighting, and Toilet Facilities
 
 
 31
 Defendants seek to dismiss several of Chavis' claims on the grounds that he has failed to supply more than conclusory allegations. While courts will liberally construe pro se complaints, some facts must be intimated to support a claim in order to withstand dismissal. Strauss v. City of Chicago, 760 F.2d 756, 767. Here, Chavis offers no information to buttress his naked assertions that he has received inadequate medical and dental care, and that the lighting and toilet facilities were likewise "inadequate." Complaint at paragraphs 3 & 17. Without more, these claims simply cannot survive a motion to dismiss. Accordingly, we grant defendants' motion with respect to these claims.
 
 2. Food and Dining Conditions
 
 32
 Chavis alleges that while incarcerated at the jail he had to eat on the floor where little bugs flew around his food, that he was routinely served "incorrect" portions of food, and that sometimes he was served spoiled food. Defendants correctly point out that these claims lack detail--leaving us to wonder, for instance, what constitutes an "incorrect" portion of food and how often Chavis received spoiled food--and contend that the claim should be dismissed.
 
 
 33
 It is clear that prisons have an obligation to "provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985) (quotations omitted), cert. denied, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986). The question, then, is whether the conditions of which Chavis complains fall below this standard.
 
 
 34
 Offered independently, each of Chavis' complaints fails to state a constitutional violation. Unlike the persistent provision of inedible meals, occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs. Similarly, while providing inmates with vermin infested food clearly rises to the level of a constitutional infraction, a mere allegation that bugs flew around the food, without more,[5] does not sufficiently allege that the jail served nutritionally inadequate food that threatened the health of those who consumed it. As for Chavis' charge that he was routinely served "incorrect" portions, this assertion is simply too vague to support a claim. Finally, while we acknowledge that eating on the floor is less comfortable than at a table, this side effect of overcrowding adds little to Chavis' efforts to state a constitutional claim.
 
 
 35
 Even taken together these claims fail to survive dismissal. The Supreme Court recently stated that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise...." Wilson v. Seiter, 111 S.Ct. 2321, 2327 (1991) (emphasis omitted). This is not such a case. While Chavis depicts less than optimal eating conditions and fare, all of his allegations combined still fail to suggest that he was being served food which posed "an immediate danger to his health and well being." Thus, we dismiss this claim.
 
 3. Sleeping Conditions
 
 36
 Chavis complains that he was forced to sleep on a mattress on the floor in a room with numerous other inmates, rather than on a bed in a cell. His primary objection to this situation seems to be that sleeping on a mattress on the floor caused pain in his hip and leg. This claim must fail.
 
 
 37
 Courts in this district have previously recognized that, unless aggravating circumstances exist, "the Constitution is indifferent as to whether the mattress a detainee sleeps on is on the floor or on a bed." Lynch v. Sheahan, 92 C 1087, 1992 U.S.Dist. LEXIS 7749 (N.D.Ill. May 29, 1992). See also Powell v. Cook County Jail, 814 F.Supp. 757, 759 (N.D.Ill.1993) (same); Bowden v. Fairman, 92 C 7613, 1992 U.S.Dist. LEXIS 18399 (N.D.Ill.1992) (same). While Chavis alleges that mice could be seen in his unit at night, he notably does not allege that he came into contact with the mice, nor would such an allegations necessarily salvage his claim. Courts have routinely recognized that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task," and that "failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." Bowden v. Fairman, No. 92 C 7613, 1992 WL 366905, 1992 U.S.Dist. LEXIS 18399 (N.D.Ill. December 2, 1992) (citing Harris v. Fleming, 839 F.2d 1232 (7th Cir.1988). See also Lynch v. Sheahan, No. 92. C 1087, 1992 WL 245599, 1992 U.S.Dist. LEXIS 13858 (N.D.Ill. Sept. 11, 1992) (absent showing that sleeping conditions were result of punitive intent, rather than overcrowding, fact that rats and roaches crawled over plaintiff while sleeping on a mattress on the floor of the Cook County Jail insufficient to survive summary judgment motion). More significantly, Chavis acknowledges that the sleeping conditions at the jail were the direct result of overcrowding, rather than the product of any punitive intent on defendants' part. Accordingly, we dismiss this claim. See Jones v. Sheahan, 1993 WL 147480 at * 2, 1993 U.S.Dist. LEXIS 6010 at * 6 (N.D.Ill.1993) (where Sheriff of the Cook County Jail were "limited by the funds and facilities that had been made available to him by those controlling the purse strings," conditions caused by overcrowding would not support a Sec. 1983 claim).
 
 
 38
 4. Proximity to Drug Addicts and Inmates with
 
 Communicable Diseases
 
 39
 As for Chavis' claim that he was forced to sleep near inmates with communicable diseases and next to drug addicts with infected track marks, defendants properly highlight the absence of any allegations of injury. That is, Chavis nowhere claims that he contracted any communicable disease, or suffered any other injury, as a result of his proximity to these inmates. Accordingly, this claim, too, is dismissed. See Bowden, 1992 WL 366905 at * 1-2, 1992 U.S.Dist. LEXIS at * 4 (where plaintiff did not allege that he contracted tuberculosis, he could not maintain a Sec. 1983 claim predicated on being housed with tubercular inmates) (citing Niehus v. Liberio, 973 F.2d 526, 531-32 (7th Cir.1992)).
 
 5. Clothing Changes and Showering
 
 40
 Chavis alleges that he was only provided with a change of uniform once every three weeks, and that in the interim he was effectively prohibited from washing his clothes. Additionally, according to Chavis, 106 inmates were required to share a single functional shower.[6] The Constitution obliges penal institutions to provide inmates with basic hygienic necessities in keeping with "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981). However, when compared with conditions that have been held constitutional in this circuit, it rapidly becomes clear that Chavis' claims do not amount to constitutional deprivations.
 
 
 41
 In Harris v. Fleming, 839 F.2d 1232 (7th Cir.1988), a prisoner was allegedly deprived of toilet paper for five days, was not provided with soap, toothpaste or a toothbrush for 10 days, and was kept in a filthy, roach-infested cell. The Seventh Circuit concluded that these deprivations did not amount to unconstitutional punishment where the conditions were temporary and the plaintiff did not suffer any physical harm. Similarly, in Lock v. Clark, No. S90-327, 1992 WL 559660, 1992 U.S.Dist. LEXIS 21991 (N.D.Ind. March 17, 1992), the court found no constitutional violation where an inmate was held without soap and hygienic items for seven days, denied access to a shower, given only one and a half rolls of toilet paper, and left to wear only his undershorts.
 
 
 42
 By comparison, it is clear that wearing the same uniform for three weeks and sharing a shower with 106 inmates do not amount to the sort of serious deprivations that drag Chavis' conditions of confinement below "the minimal civilized measure of life's necessities." This is particularly true where, as here, Chavis fails to allege any injury stemming from either condition and neglects to detail how often he was permitted to shower.[7] We therefore dismiss these claims.
 
 6. Recreation
 
 43
 During his stay at Cook County, Chavis was only permitted to exercise outside once a month. Furthermore, he alleges that it was difficult for him to find a seat in the television room, since inmates were wont to step on legs and other limbs that got in their way.[8] Lack of exercise may rise to a constitutional violation "[w]here movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised." French, 777 F.2d at 1255. Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity. See Stewart v. McGinnis, 800 F.Supp. 604 (N.D.Ill.1992), (although inmates were not permitted to exercise outdoors during an 85-day lockdown period, they were allowed to leave their cells, use the day room, and generally move about the prison, thus undercutting plaintiff's constitutional claim), aff'd, 5 F.3d 1031 (7th Cir.1993).
 
 
 44
 Here, Chavis' allegations clearly demonstrate that he enjoyed significant freedom of movement around the prison. Although he laments the crowded condition of the television room, it is obvious that he has sufficient mobility to obviate his constitutional claims. Moreover, Chavis fails to allege that he suffered from any adverse health effects, let alone that his muscles atrophied. For these reasons, we dismiss these claims.
 
 7. Access to Religious Services
 
 45
 In Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), the Supreme Court stated that the First Amendment guarantees inmates a "reasonable opportunity" to practice religion.[9] This Court later expanded upon that general statement, holding that an inmate "is not denied a reasonable opportunity to practice his religion so long as he is granted regular access to religious services." Houlihan v. Moynihan, No. 87 C 3779 (N.D.Ill. June 26, 1989). Chavis alleges that
 
 
 46
 county officers pick and choose who they want to go to religious services, [sic] as plaintiff [sic] beliefs are Islamic, and have been denied every time he tries to attend, as the officers working here only select who they want to go, meaning a certain number.
 
 
 47
 Complaint at p 10. Although the mere necessity to limit the number of inmates who can attend religious services at any one time may well serve a legitimate penological function, Chavis' assertion that he was denied any access to religious services during his entire four and a half month stay is sufficient to allege that he was denied a reasonable opportunity to practice his religion.
 
 
 48
 However, Chavis is not home free, yet. In addition to stating a constitutional violation, Chavis must allege the requisite intent on the defendants' part in order to hold them liable. Here, Chavis makes clear that it was the guards who were responsible for selecting inmates to attend religious services, not defendants. Moreover, while we may reasonably infer a prison policy of restricting the number of prisoners who may go to services at any one time, we may not assume, without further allegations, that the jail had a policy either of preventing Muslims in general, or Chavis specifically, from worshipping.
 
 
 49
 Additionally, Chavis includes no allegations from which we can deduce that the named defendants were aware of the guards' conduct and consciously permitted it to continue. Although Chavis alleges that he filed a grievance--only to be told that the committee "could do nothing about the situation here"--he neglects to apprise us of when the grievance was filed or, more importantly, whether it included this complaint. Without this information, we have no basis for supposing that any of the defendants were aware of Chavis' exclusion from worship services or that they had an opportunity to correct the situation. Without any basis from which to infer that defendants harbored any punitive intent toward Chavis, we must dismiss this claim.
 
 8. Threats for Expressing His Beliefs
 
 50
 Chavis alleges that he was threatened for complaining to other prisoners about jail conditions. However, it is plain that "[a]llegations of mere threats of violence are not punishment in the constitutional sense." Murphy v. Cook County, No. 92 C 3737, 1992 U.S.Dist. LEXIS 8959 (N.D.Ill. June 19, 1992) (citing Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (per curiam ); Simms v. Reiner, 419 F.Supp. 468, 474 (N.D.Ill.1976)). This claim, then, is dismissed.
 
 
 51
 9. Physical and Verbal Abuse by Officers from the Sheriff's Department
 
 
 52
 Chavis alleges that during his stay at the jail, corrections officers sometimes kicked him in his injured right leg and hit him in the head. In addition, he complains that county officers regularly cursed him and called him foul names for no reason. Notably, however, Chavis does not identify the officers who engaged in this conduct, nor does he offer any indication that the named defendants were aware of the situation, let alone that they participated in or directed it.
 
 
 53
 In order to state a claim against any of the defendants under Sec. 1983, Chavis must allege that the defendants were somehow involved in the constitutional violation at issue. While Chavis may have grounds for an action against the guards themselves, government officials cannot be held liable on a theory of respondeat superior. Because it is evident from his complaint, that the instant defendants had nothing to do with Chavis' alleged physical and verbal mistreatment, these claims are dismissed.
 
 IV. Conclusion
 
 54
 For the foregoing reasons, we grant defendants' motion to dismiss. It is so ordered.
 
 Dated 2/15/94
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 We read Chavis' "Motion for Judgment against Defendants' [sic]" as a response to defendants' motion to dismiss, and view his additional motion for judgment as a surreply. To the extent that these filings represent independent motions, they are denied
 
 
 [2]
 Chavis provides no details about the contents of the grievance or when it was filed
 
 
 [3]
 In any event, the fact that Chavis has since been transferred from Cook County Jail first to the Illinois Department of Corrections facility in Joliet and then to the IDOC institution in Lincoln effectively moots his claims for equitable relief. Martin, 917 F.2d at 339
 
 
 [4]
 While the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, applies to constitutional claims brought by pretrial detainees, the standard to be applied in both situations is essentially the same. In Sec. 1983 punishment claims, a detainee, like a prisoner, must establish (1) that the alleged deprivation amounts to a constitutional denial, and (2) that the official intentionally inflicted harm, or that he had actual knowledge of impending harm and consciously refused to take reasonable steps to prevent it. Wilson v. Seiter, 111 S.Ct. 2321 (1991)
 
 
 [5]
 For example, Chavis does not allege that bugs could be found in or on his food, or, indeed, that he was not able to successfully swat them away. Although we acknowledge the discomfort such conditions undoubtedly cause, we cannot conclude that they amount to a constitutional violation
 
 
 [6]
 Chavis' allegations have some notable gaps. For example, Chavis does not indicate whether he was afforded any clean underwear during the three weeks, nor does he explain how often he was actually allowed to shower. These, of course, are salient oversights
 
 
 [7]
 In Davenport v. De Robertis, 844 F.2d 1310, 1316 (7th Cir.1988), cert. denied, Lane v. Davenport, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988), for example, the Seventh Circuit held that one shower per week was constitutionally sufficient under the Eighth Amendment. We have no reason to infer that Chavis was allowed less than one shower per week
 
 
 [8]
 In Chavis' own words, "the majority of the inmates here are not that polite." Complaint at p 17
 
 
 [9]
 The First Amendment rights afforded pretrial detainees are the same as those afforded convicted inmates. See Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)