Eric **WRINKLES**, Mike Lambert, Benny Saylor, and Gamba M. Rastafari, Plaintiffs,

v.

Cecil K. **DAVIS**, Defendant.

No. 3:03–CV–0888 AS.

United States District Court, N.D. Indiana, South Bend Division.

March 17, 2004.

Eric Wrinkles, Westville, IN, pro se.

Mike Lambert, Westville, IN, pro se.

Benny Saylor, Michigan City, IN, pro se.

Gamba M Rastafari, Michigan City, IN, pro se.

Thomas M Dixon, Dixon Wright and Associates, South Bend, IN, for Defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Eric Wrinkles, Mike Lambert, Benny Saylor, and Gamba Rastafari filed a complaint in the LaPorte Superior Court, pursuant to 42 U.S.C. § 1983, alleging that Indiana State Prison ("ISP") superintendent Cecil Davis violated their federally protected rights. They also allege that Superintendent Davis violated rights protected by Indiana's constitution and statutes and by Indiana Department of Correction ("IDOC") policy.

The defendant removed the case to this court pursuant to 28 U.S.C. § 1441(b). Under 28 U.S.C. § 1915A(a), federal courts are required to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Because the plaintiffs are prisoners as defined in § 1915A(c) and the defendant they seek redress from is a governmental employee, § 1915A requires this court to screen this complaint, even though the plaintiffs originally filed it in state court. Courts apply the same standard under

§ 1915A as when addressing a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint. *Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir.2000).

A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.

In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED.R.CIV.P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001) (citations, quotation marks and ellipsis omitted).

According to the complaint, the ISP's Death Row is an administrative segregation unit designed to house inmates sentenced to death. The plaintiffs are all sentenced to death, and were housed on Death Row on October 27, 2002, when a Death Row prisoner was killed during recreation, apparently by other Death Row prisoners. Superintendent Davis placed the facility on lockdown, which means that normal prison routines were suspended and inmates were confined to their cells. The lockdown of other parts of the facility was soon lifted. Death Row, however, remained on lockdown for seventy-nine days, though some privileges such as visitation and religious services were reinstated earlier.

The plaintiffs assert that Superintendent Davis violated rights protected by the Constitution's First, Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as rights created by Indiana's constitution and statutes and IDOC policy. Section 1983 provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

## I. DUE PROCESS CLAIMS

■ In Section 4(A) of their complaint, the plaintiffs allege that Superintendent Davis deprived them of due process when he locked the Death Row unit down, thereby depriving them of out-of-cell recreation and services they normally received. Among the privileges or services the plaintiffs state they lost during all or part of the lockdown include hot meals, access to library books, regular commissary services including arts and crafts materials, contact visitation, and religious services.

■ The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials. *Craig v. Cohn*, 80

F.Supp.2d 944, 947 (N.D.Ind.2000). The Fourteenth Amendment provides that states may not deprive persons of "life, liberty, or property" without due process of law. Thus, analysis of a due process claim begins with determining whether the plaintiff has a liberty or property interest with which the state has interfered. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Only if the plaintiff has a liberty or property interest does the court move to the second step and examine whether the procedures used to deprive him of that interest were constitutionally sufficient. *Id.*

▪ The Constitution itself creates no liberty interest in inmates avoiding an institutional lockdown. Indeed, the state, not the Constitution, is the source of "the rights if any that persons lawfully confined in state prisons have to enjoy a modicum of freedom of locomotion within the prison walls." *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991). Subject only to Eighth amendment restrictions, "a state can confine a prisoner as closely as it wants, in solitary confinement if it wants." *Id.* at 1252. "Only if the state decides to recognize such a liberty—a liberty that is artificial, therefore, rather than natural— does he have a right that he can enforce under the due process clause of the fourteenth amendment." *Id.* at 1252, citing *Hewitt v. Helms,* 459 U.S. 460, 470–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

At one time, courts analyzed state statutory or regulatory language pursuant to *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), to see "if the State had gone beyond issuing mere procedural guidelines and had used 'language of an unmistakably mandatory character' such that the incursion on liberty would

not occur 'absent specified substantive predicates.'" *Sandin v. Conner,* 515 U.S. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), *quoting Hewitt v. Helms,* 459 U.S. at 471–472, 103 S.Ct. 864. In *Sandin,* the Supreme Court modified the approach used to identify liberty interests in prisoner cases, holding that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner,* 515 U.S. at 483–484, 115 S.Ct. 2293 (citations omitted).

The court held that "discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," *Id.,* at 485, 115 S.Ct. 2293, and that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.,* at 486, 115 S.Ct. 2293. Institutional lockdowns, like disciplinary segregation, fall within the expected parameters of an inmate's sentence, and do not present the type of "atypical" deprivation in which a state might conceivably create a liberty interest.

Moreover, prison officials must be free to take appropriate action to ensure the institution's security and the safety of its inmates and employees, and so must "be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and disci-

pline and to maintain institutional security. 'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (citations omitted).

The Fourteenth Amendment creates no liberty interest in inmates avoiding an institutional lockdown, and Superintendent Davis locked the Death Row Unit down in reaction to a serious breach of security on the unit. Even giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, Superintendent Davis did not violate their Fourteenth Amendment due process rights when he locked down the Death Row Unit, temporarily depriving them of out-of-cell recreation and services they normally received.

## II. FIRST AMENDMENT CLAIMS

■ In Sections 4(C) and 4(E) of their complaint, the plaintiffs allege that Superintendent Davis violated rights protected by the Constitution's First Amendment. They state that before the lockdown, "religious volunteer's (sic) were allowed on the unit for group religious services as well as for Tuesday and Wednesday evening spiritual discussions with the D/R men in their individual cells. All of this ceased" when Superintendent Davis placed the unit on lockdown. (Complaint at p. 4).

■ Under the First · Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir.1991). A prison regulation or policy which might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is 'reasonably related to legitimate penological interests.' *Africa v. Horn,* 998 F.Supp. 557, 559 (E.D.Pa. 1998), quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *See also O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (applying the *Turner v. Safley* reasonableness test to First Amendment religious rights). "A law that burdens religious practice need not be justified by a compelling governmental interest if it is neutral and of general applicability." *Ryncarz v. Eikenberry,* 824 F.Supp. 1493, 1502 (E.D.Wash.1993); citing *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

"Security is a legitimate penological interest," *Morrison v. Hall,* 261 F.3d 896, 907 (9th Cir.2001), and locking a prison housing unit down following the murder of an inmate by other inmates on that unit is reasonably related to a legitimate penological interest. A permanent ban on religious services and visits by religious counselors might violate the First Amendment, but the complaint establishes that religious services and visits by religious counselors resumed long before the lockdown was lifted.

■ The plaintiffs also allege that all personal visits to Death Row inmates were suspended for the first fifty-four days of the lockdown. But "for convicted prisoners, '[v]isitation privileges are a matter subject to the discretion of prison officials.'" *Berry v. Brady,* 192 F.3d 504, 508 (5th Cir.1999), citing *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.1975). That Superintendent Davis suspended visitation for a portion of the lockdown states no federal claim upon which relief can be granted.

## III. FOURTH AMENDMENT CLAIMS

■ In Section 4(E) of their complaint, the plaintiffs allege that Superintendent Davis violated the Fourth Amendment's prohibition against unreasonable searches and seizures. They assert that during the lockdown, prison officials conducted at least eight individual and collective shakedowns to ensure no contraband remained on the unit, removed metal lockers from the cells, and removed all exercise equipment from the unit.

The Supreme Court has refused to "recognize any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 525–6, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Recognizing "privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* at 526, 104 S.Ct. 3194. Accordingly, the plaintiffs' Fourth Amendment claims state no claim upon which relief can be granted.

## IV. EIGHTH AMENDMENT CLAIMS

In section 4(A) and 4(E) of their complaint, the plaintiffs allege that Superintendent Davis subjected them to cruel and unusual punishment during the seventy-nine day lockdown. The defendants allege that they were not given out-of-cell recreation during the lockdown and were denied services they usually received.

An Eighth Amendment claim has two components—objective and subjective. To satisfy the objective component, "the deprivation alleged must be objectively, 'sufficiently serious.'" *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citing *Farmer v. Brennan*, 511

U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Therefore, 'extreme deprivations are required to make out a conditions-of-confinement claim'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

*Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir.2001).

■ The plaintiffs allege that they had no access to telephones for fifty-five days, no hygiene services for sixty-five days, no hot meals for thirty days, and no access to exercise equipment. Denial of the services listed above during part of a seventy-nine day lockdown is not an "extreme deprivation," and is not "sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834, 114 S.Ct. 1970.

■ The plaintiffs also allege that denial of out-of-cell recreation during the lockdown violated the Eighth Amendment's cruel and unusual punishments clause. In *Delaney v. DeTella*, the plaintiff alleged that denial of out-of-cell exercise opportunities during a six month lockdown constituted an objectively serious deprivation of a basic human need. The Seventh Circuit noted that:

In recent years, we have not only acknowledged that a lack of exercise can rise to a constitutional violation, *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), but have concluded that "exercise is now regarded in many quarters as an indispensable component of preventive medicine." *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir.1995). Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.

Although we have recognized the value of exercise and its medicinal effects,

we have also consistently held that short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir.1997) (70 day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial not deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir.1986) (limited recreational activities sufficient where average prison stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir.1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir.1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison–Bey v. Thieret*, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

*Delaney v. DeTella*, 256 F.3d at 683–684.

The plaintiffs allege that they were denied out-of-cell recreation for seventy-nine days, slightly longer than the period of time found not to state a claim in *Thomas v, Ramos*, 130 F.3d at 764, and also longer than the period of time found to state a claim in *Antonelli v. Sheahan*, 81 F.3d at 1432. In reviewing lack of out-of-cell recreation claims, the Seventh Circuit considers the length of time an inmate was deprived of out-of-cell recreation in conjunction with the size of the cell in which he was confined. In *Antonelli v. Sheahan*, the Seventh Circuit court found that an inmate confined in his cell for seven weeks without out-of-cell recreation had "a viable Eighth Amendment claim because he did not have sufficient room for any type of recreation within his cell." *Thomas v. Ramos*, 130 F.3d at 764. But another inmate confined in his cell for seventy days, "was

not in this situation while he was confined in segregation because he would have been able to engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and step-ups." *Id.* 130 F.3d at 764.

In *Delaney v. DeTella*, the Seventh Circuit found the prisoner's claim viable, because "for 6 months, Delaney remained in a cell the size of a phone booth without any meaningful chance to exercise." *Id.* at 684. The cells in the unit in which Delaney was confined "were small and cramped, measuring only about 122 inches by 43 to 56 inches," *Id.* at 682, and were, at most, about 47.5 square feet in size—not all of which was space usable for exercise. *Delaney v. DeTella*, 256 F.3d at 682.

If the plaintiffs had the space and opportunity to exercise within their cells, then this case might be analogous to *Thomas v. Ramos*, and seventy-nine days without out-of-cell recreation might not violate their Eighth Amendment rights. If, however, they did not have the space and opportunity to exercise within their cells, then the facts in this case would be more similar to those the court found to violate the Eighth Amendment in *Antonelli v. Sheahan* and *Delaney v. DeTella*. Giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, this court will allow the plaintiffs' claim that lack of out-of-cell recreation for seventy-nine days violated the Eighth Amendment's prohibition against cruel and unusual punishments to proceed.

## V. STATE LAW CLAIMS

In Sections 4(B), 4(D) and 4(F) of their complaint, the plaintiffs allege that Superintendent Davis violated rights protected by Indiana law when he placed the Death Row Unit on lockdown. Pursuant to 28 U.S.C. § 1367, which codified the pendent jurisdiction doctrine, federal courts, unless otherwise provided by statute, "have sup-

plemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy."

Federal courts, however, generally should relinquish supplemental jurisdiction over state law claims when the federal claims are dismissed before trial. *See* 28 U.S.C. § 1367(c)(3). Accordingly, this court will dismiss the state law claims that are supplemental to the federal claims the court has found not to state a claim upon which relief can be granted, without prejudice to the plaintiffs' right to refile those state law claims in state court. This court will retain jurisdiction over the state law claim supplemental to the plaintiffs' claim that denial of out-of-cell recreation violated the Eighth Amendment's prohibition against cruel and unusual punishments, and will allow them to proceed on that claim to the extent that they met any procedural prerequisites established by state statute to bring it against the defendant.

## VI. INJUNCTIVE RELIEF CLAIMS

The plaintiffs seek injunctive and declaratory relief, as well as damages. According to the complaint, the plaintiffs are currently being held in the Maximum Control Facility "temporarily," while the ISP Death Row Unit is being renovated.

If a prisoner is transferred to another prison after he files a complaint, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir.1996), quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir.1988). The plaintiffs' transfer from the ISP to another facility would normally render any claims for injunctive relief moot. *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Martin v. Davies,* 917 F.2d 336, 339 (7th

Cir.1990), *cert. denied* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991); *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996). A prisoner's transfer from one institution to another also normally renders his claims for declaratory relief moot. *Higgason v. Farley,* 83 F.3d at 811, *citing Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (applying the capable-of-repetition doctrine without discrimination between claims for declaratory relief and claims for injunctive relief).

In this case, however, the plaintiffs state that their transfer to the Maximum Control Facility is only temporary, and assert that they will be returned to the ISP Death Row Unit when renovations are complete. Giving the plaintiffs the benefit of the inferences to which they are entitled at the pleadings stage, the court concludes that the plaintiffs have sufficiently pled that they are "likely to be retransferred" to the ISP, *Higgason v. Farley,* 83 F.3d at 811, and will allow them to proceed on their federal injunctive and declaratory relief claims.

The court, however, will not allow the plaintiffs to proceed in this court on their state law injunctive and declaratory relief claims. "A federal court's grant of relief against state officials on the basis of state law ... does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

## VII. CONCLUSION

For the foregoing reasons, the court **DISMISSES,** pursuant to 28 U.S.C.

§ 1915A(b), all claims that the defendant violated the plaintiffs' federally protected rights, except for their claim that the defendant violated the Eighth Amendment's prohibition against cruel and unusual punishments by confining them to their cells for seventy-nine days without out-of-cell exercise. The court also **DISMISSES**, without prejudice, all of the plaintiffs' supplemental state law claims, except their damage claims for being confined in their cells for seventy-nine days.

**IT IS SO ORDERED.**