James H. HIGGASON, Jr.,
Plaintiff–Appellant,

v.

Robert A. FARLEY, Superintendent,
et al., Defendants–Appellees.

No. 95–1010.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 28, 1995.*

Decided Jan. 19, 1996.

Ordered Published May 1, 1996.**

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement has been filed. Accordingly, the appeal is submitted on the briefs and the record.

\** This decision was released on January 19, 1996 as an unpublished order pursuant to Cir.R. 53(b). The court has decided to reissue the decision as a published opinion.

James H. Higgason, Jr. (submitted), Carlisle, IN, pro se.

Anthony W. Overholt, Office of Atty. Gen., Indianapolis, IN, for Robert A. Farley, Barry Nothstine, William Hartley, Vince Forestieri, Milton D. Williams, H. Christian Debruyn, Norman G. Owens.

Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.

PER CURIAM.

In 1993, James Higgason filed a 42 U.S.C. § 1983 complaint against Indiana prison officials, alleging that he was denied due process when he was transferred to the D–Cellhouse (DCH) at Indiana State Prison. The district court dismissed Higgason's claims for injunctive relief as moot because he had been transferred to a different prison, and granted the defendants' motion for summary judgment, finding no liberty interest in remaining in the general population. Higgason appeals. We affirm in part, vacate and remand in part, and reverse and remand in part.

We review *de novo* a grant of summary judgment. *Green v. Shalala*, 51 F.3d 96, 99 (7th Cir.1995). The evidence in the record is basically Higgason's affidavit in response to the summary judgment motion, which expands on facts asserted in his complaint, against the affidavit of defendant Hartley. Accordingly, if Higgason's assertions would support findings in his favor, summary judgment would be premature at this stage.

Higgason's principal claim is that Indiana has created a liberty interest with respect to segregation from the general prison population. At the time of the district court's judgment, courts would investigate the language

of relevant laws, regulations, or policies, in order to determine whether the state had created a liberty interest protected by procedural due process. If the language was of a mandatory character, cabining the prison official's discretion, then the prisoner had a liberty interest. If the language was discretionary, no liberty interest would be found. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Kentucky Dept. Of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Russ v. Young*, 895 F.2d 1149 (7th Cir.1990).

This past June, subsequent to the filing of this appeal, the Supreme Court changed the method of determining a prisoner's liberty interest, in *Sandin v. Conner*, — U.S. —, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[1] Under *Sandin*, we must determine if there is a genuine issue of material fact as to whether DCH worked any "atypical and significant hardship" on Higgason "in relation to the ordinary incidents of prison life," or as to whether DCH infringed any rights protected by the Due Process Clause "of its own force." *Id.* at —, 115 S.Ct. at 2300.

■ Higgason contends that DCH residents were segregated from the general prison population, and that the east and west sides of DCH were segregated from each other. According to Higgason, DCH residents generally had to stay in the range of their cell, and they could never enter another prisoner's cell. DCH was "regularly" put on lockdown status, "for almost every minor disruptive or violent incident," more frequently and for longer periods of time than the general prison population, and more frequently even than disciplinary segregation.

■ The Due Process Clause itself does not create a right for prisoners to leave the area around their cells, to visit other prisoners, or not to be subjected to lockdowns; only the Eighth Amendment limits these restrictions. *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991) (holding that, subject only to the Eighth Amendment, "a state can confine a prisoner as closely as it wants, in solitary confinement if it wants; a prisoner

has no natural liberty to mingle with the general prison population"). None of these restrictions on movement violate the Eighth Amendment, given that they do not "deprive inmates of the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), such as "adequate food, clothing, shelter, ... medical care, and ... safety," *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quotation omitted). Applying *Sandin*, we deem it clear that none of these restrictions work any "atypical and significant hardship" on Higgason.

■ Higgason also argues that DCH residents are denied access to various kinds of privileges, such as social and rehabilitative activities. But, as *Sandin* emphasized, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Sandin*, — U.S. at —, 115 S.Ct. at 2301 (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977) (quotation omitted)). These reductions in Higgason's privileges simply do not impose "atypical and significant hardship" on Higgason.

■ One claim concerning loss of privileges deserves elaboration. Higgason argues that the denial of educational programs deprived him of the opportunity to earn good time credits under Ind.Code § 35–50–6–3.3, and thus deprived him of a liberty interest. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that while the Due Process Clause does not itself create a liberty interest in good time credits, the state may create a liberty interest in earned good time credits. *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. According to *Sandin*, if "the State's action will inevitably affect the duration of [the] sentence," there is due process protection, but there is no such protection for action that merely *might* affect the duration of the sentence. *Sandin*, — U.S. at —, 115 S.Ct. at 2302. Even if Higgason had

---

1. The defendants' brief, filed on July 12, 1995, addressed the effect of *Sandin* on this case. Higgason's original brief was filed before *Sandin* was decided; he failed to file a reply brief.

been given the opportunity, it was not inevitable that he would complete an educational program and earn good time credits. Thus, denying the opportunity to earn credits did not "inevitably affect the duration of the sentence," and did not infringe on a protected liberty interest.

Higgason's next assertion is that of the 350 prisoners in DCH, only 36 are permitted to go to the law library for one hour every week, and those who go are not allowed to check out or bring back legal materials from the law library to their cells. Higgason relies on *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which held that "the fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. The record does not indicate whether the prison provides assistance from persons trained in the law, so the question would be whether the law library privileges are sufficient. However, Higgason must show not only that he did not have sufficient access to the law library, but also "some quantum of detriment" from this deprivation of access. *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir.1992). Higgason has not shown any "quantum of detriment"; at most, he makes vague claims that he was denied "meaningful access to the courts." The prison need not provide any more than that which will facilitate claims in their "preliminary stages in the courts." *Smith v. Shawnee Library System*, 60 F.3d 317, 322 (7th Cir.1995) (collecting cases). Higgason drafted a detailed complaint with reasonable grounds in law, and, beyond that, made several good arguments against the summary judgment motion. Given the absence of detriment to Higgason, summary judgment was appropriate on the law library claim.

The Court in *Sandin* also noted that even if a prisoner does not have a state-created liberty interest, the prisoner still "retain[s] other protection from arbitrary state action even within the expected conditions of confinement. [The prisoner] may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate." *Sandin,* — U.S. at — n. 11, 115 S.Ct. at 2302 n. 11. Higgason has put forth such claims. He contends that prisoners were transferred to DCH because of their religion, their speech or associations, and their exercise of the right of access to the legal system. However, Higgason never alleges or gives evidence that *he himself* was transferred due to religion, speech, or association. Thus, he does not have standing to raise any First Amendment or equal protection claims on these grounds. As for his claim that "Higgason and all other offenders were not permitted to attend or participate in any type of organized religious services," he does not allege that he wanted to attend organized religious services, or that he would have attended if permitted. Thus, he does not allege an injury to himself, and here again does not have standing. Higgason also claims that the defendants discriminated in favor of Christians and against non-Christians, but never alleges that he himself is non-Christian, or that he was discriminated against on that basis. On that claim, too, Higgason lacks standing.[2]

Thus far, Higgason has no claims that survive summary judgment. However, Higgason also contends that he was transferred into DCH because he was a prisoner who filed lawsuits on his own, and because he assisted other prisoners in filing lawsuits. If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983. *Matzker v. Herr*, 748 F.2d 1142, 1150–51 (7th Cir.1984), *limited on other grounds, Salazar v. City of Chicago*, 940 F.2d 233, 240–41 (7th Cir.1991); *Buise v. Hudkins*, 584 F.2d 223, 229, 231 (7th Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). The record on this issue is a swearing contest, with Higgason asserting an invalid reason for the transfer, and the defendants asserting a valid reason.

2. Higgason sought class action treatment for all of his claims, but the judge denied class action status. Higgason does not argue on appeal against the denial of class action status.

Summary judgment is inappropriate for this claim at this time.[3]

■■■ The district court held that Higgason's transfer from Indiana State Prison (ISP), where DCH was located, to Wabash Valley Correctional Institute (WVCI) rendered his claims for injunctive relief moot. The court rejected Higgason's argument that the actions of the defendants were capable of repetition but avoiding review. Being a question of law, we review *de novo* the dismissal of a claim as moot. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir.1995). If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is likely to be retransferred." *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir.1988). Allegations of a likely retransfer may not be based on mere speculation. *Preiser v. Newkirk*, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975). Furthermore, "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974)); see also *Moore*, 862 F.2d at 150. Higgason stated in response to the summary judgment motion that "upon his release from disciplinary segregation [at WVCI], his return to the parent institution from whence he came [ISP] is a virtual certainty." However, such an allegation does not amount to a "showing" or a "demonstration" of the likelihood of retransfer; Higgason has not pointed to anything in the record supporting his estimate of "virtual certainty." Thus it was proper for the district court to dismiss the claims for injunctive relief as moot. For the same reason, the district court on remand must dismiss Higgason's claims for declaratory relief as moot. *See, e.g., Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (applying the capable-of-repetition doctrine without discriminating between claims for declaratory relief and claims for injunctive relief).

The district court's judgment is REVERSED and REMANDED with respect to Higgason's claim for damages concerning his contentions that he was transferred into or kept in DCH because he filed legal claims for himself or for others. The district court's judgment with respect to Higgason's claims for declaratory relief is VACATED and REMANDED with instructions to dismiss those claims as moot. In all other respects, the district court's judgment is AFFIRMED. The case is REMANDED for proceedings consistent with this opinion.

---

3. The district court discussed only whether Higgason had a liberty interest in avoiding administrative segregation, and evidently overlooked Higgason's claim that he was transferred because of his being a "jailhouse lawyer". Higgason adequately presented the latter claim to the district court: he appears to specifically include himself among "jailhouse lawyers" who were transferred to DCH "as a means to delay and/or deny access to the court," (R.5 at 5-E to 5-F), and states in his response to the summary judgment motion that "Higgason and other offenders have been placed in [DCH] because they have sued employees of the [Indiana State Prison] and have assisted other prisoners in pursuing their constitutional right for redress" (R. 66 at 9-10; see also R. 68 at 28, 29, 32-33). We are concerned by the possibility that Higgason "sandbagged" the appellees by not referring to this claim (even generally) in the statement of issues section of his brief on appeal, and that this failure on Higgason's part could explain why the appellees did not address the claim in their own brief. *See* Fed.R.App.P. 28(a)(3). However, Higgason does refer to this claim both in his statement of facts (Appellant's Br. at 5) and the summary of argument section (*Id.* at 12), and presents an argument on this claim in the argument section (*Id.* at 33, 36). Especially given Higgason's pro se status, we feel that Higgason has raised this claim on appeal sufficiently to alert the appellees to it.