Rufus WEST, Plaintiff,

v.

Gary McCAUGHTRY, et al., Defendants.

No. 97–C–70.

United States District Court,
E.D. Wisconsin.

Aug. 6, 1997.

Rufus West, Waupun, WI, pro se.

James E. Doyle, Jr., Mark E. Smith, Wisconsin Dept. of Justice, Office of the Atty. Gen., Madison, WI, for Defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Presently before the court are the plaintiff's motions for injunctive relief. Mr. West filed this action on January 27, 1997, alleging claims against approximately 54 defendants, pursuant to 42 U.S.C. § 1983. Mr. West filed an amendment to his complaint on March 19, 1997. Although the plaintiff has raised a multitude of claims, most of them stem from his belief that, because of an overdose of medication that was given to him, he cannot walk. He alleges that prison officials have done nothing to assist him in gaining the use of his legs.

In a decision and order dated May 16, 1997, I examined the plaintiff's allegations and determined that certain of his claims were legally frivolous and that others were not and could go forward. In that same order, I noted that the plaintiff had filed two motions for a temporary restraining order in which he asked the court to order that he be seen by an outside neurology specialist and also to order that he be released from punitive segregation into the "general population." He has also requested the court to order "proper walking assistance" and "immunity from disciplinary sanctions regarding my inability to walk-w-out [sic] assistance." I directed the defendants to respond to these motions, and on July 17, 1997, the court received the defendants' answer to the plaintiff's complaint and their brief in opposition to the plaintiff's requests for injunctive relief.

Because the defendants have filed a response to the plaintiff's requests, I will construe the motions as a request for a prelim-

inary injunction, rather than a temporary restraining order. See 11A *Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure* § 2951 (2d ed. 1995) ("When the opposing party actually received notice of the application for a restraining order, the procedure that is followed does not differ functionally from that of an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

In order to prevail on his motions, the plaintiff has the burden of making the threshold showing that he has some likelihood of success on the merits, that his remedy at law is inadequate, and that if he does not receive injunctive relief, he will suffer irreparable harm. *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1453 (7th Cir.1995); *Kellas v. Lane,* 923 F.2d 492, 493 (7th Cir. 1990). Only when Mr. West has met this burden does the court engage in a "sliding scale" analysis of the two remaining factors: weighing the harm to the parties and asking whether the public interest would not be served if an injunction were issued. *Roth,* 57 F.3d at 1453. A district court judge has broad discretion in deciding whether to grant a motion for injunctive relief. *Advent Elec., Inc. v. Buckman,* 112 F.3d 267, 274 (7th Cir.1997).

### 1. Medical Assistance

Mr. West seeks a court order that he receive proper medical treatment for his legs. In his proposed temporary restraining order, he asks to be "examined by a qualified neurology specialist and an orthopedic specialist and to obtain from both specialists an evaluation of the condition of his legs and a prescription for a full course of physical therapy that will restore and maintain the full function of his legs." Although it is undisputed that the plaintiff has been seen by the prison physician, Dr. Paulino Belgado, he argues that only a physician from outside the prison system will be able properly to evaluate his condition.

Prisoners, of course, have a right to receive adequate medical care while incarcerated. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).

Mr. West's claim for inadequate medical treatment, however, now appears to be moot. In an affidavit submitted by the defendants, Beth Dittman, one of the defendants, who is a nurse and manager of the health services unit at the Waupun Correctional Institution ["WCI"], states that on June 16, 1997, prison officials sent Mr. West to the neurology clinic of the University of Wisconsin Hospitals and Clinics "due to his chronic complaints of his inability to walk." According to Ms. Dittman's affidavit, to which the doctor's report is attached, the physician at the clinic examined Mr. West and determined that the plaintiff had a weakness in his legs, but could feel sensations. The physician, according to the affidavit, diagnosed Mr. West with "functional leg weakness," recommended that the plaintiff receive physical therapy, and found that no diagnostic tests were required "for this functional (non-organic) disorder." Ms. Dittman also states that since June 18, 1997, Mr. West has attended weekly physical therapy sessions.

In his reply brief filed with the court on August 4, 1997, the plaintiff concedes that he indeed saw an outside neurology specialist and subsequently had five physical therapy sessions. He argues that on July 24, 1997, however, the physical therapist told him that his therapy sessions were "producing no progress," and therefore that he would no longer receive the sessions. According to his brief, he told the physical therapist that he believed that it may be a psychological problem that is preventing him from walking and the therapist agreed. The plaintiff also states that the overdose of "Phenytoin" that he received in July, 1996 could be the cause of his paralysis. It should be noted, however, that in his complaint and other portions of the record, Mr. West claims that the drug that he received in July, 1996 was Dilantin.

Because the plaintiff has already received exactly what he asked for, namely an outside medial examination and physical therapy, without the assistance of the court, his motion for a preliminary injunction will be denied. *See Farmer,* 511 U.S. at 846 n. 9, 114 S.Ct. at 1984 n. 9 ("At the same time, even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to the obduracy upon cessation of the litigation."). It is not appropriate for this court to order that Mr. West see still another doctor who might make a different diagnosis. *See Davis v. Jones,* 936 F.2d 971, 972 (7th Cir.1991) (stating, in a § 1983 case for medical mistreatment, that "[w]hether the injury is actually serious is a question best left to physicians").

### A. Release into General Population, Disciplinary Immunity, and Walking Assistance

Mr. West, in asking the court to order that the defendants "give him assistance walking," states that the defendants have kept him in punitive segregation because he is unable to walk on his own to the north program cell hall, which I assume is for the general prison population. He alleges that the defendants have told him that he will be able to leave punitive segregation only when he can walk. The plaintiff states that he has acquired a total of almost 700 days in segregation, based on disciplinary findings by the defendants. The crux of the plaintiff's argument seems to be that his confinement in segregation is based solely on the defendants' false belief that he can walk. The corollary is that he believes he cannot walk and therefore that his disciplinary segregation, and all the accompanying conduct reports and other discipline is based on a lack of evidence.

A recent case decided by the court of appeals for the seventh circuit disposes of the plaintiff's claim that his disciplinary confinement is based on false evidence or the defendants' disbelief about his medical status. In *Stone–Bey v. Barnes,* 120 F.3d 718, 722–23 (7th Cir.1997), the court said that a plaintiff's claim, challenging a disciplinary confinement similar to Mr. West's, was not cognizable under 42 U.S.C. § 1983. The court of appeals recited the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372–73, 129 L.Ed.2d 383 (1994), which holds that § 1983 actions that imply the invalidity

of a prisoner's sentence or conviction are not actionable for damages under that statute, unless the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Then, relying on *Edwards v. Balisok,* — U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the court of appeals ruled that judgments rendered in a disciplinary setting in a prison were also subject to the *Heck* rule. *Stone–Bey,* 120 F.3d at 720–22. -Therefore, the prisoner's claim in *Stone–Bey*-that his due process rights were violated because the disciplinary record, on which his segregation was based, lacked supporting evidence-implied the invalidity of his "conviction" on the disciplinary charge. *Id.*

Because Mr. West has not shown that the disciplinary actions of the defendants against him have been reversed or declared invalid by a state court or by a federal grant of the writ of habeas corpus, the plaintiff's § 1983 claim challenging his disciplinary segregation is not properly before this court and should be dismissed for failure to state a claim. As to his injunctive relief, because he cannot show that there is a some likelihood that he can succeed on the merits of the claim, I will deny his request.

The plaintiff does not base his request to be immune from further discipline on any particular constitutional provision, but this claim seems to be just another attempt to attack the invalidity of his "conviction." As shown by the resolution of his request to be removed from segregation to the general population, he cannot state a § 1983 claim based on the invalidity of the defendants' disciplinary findings. This claim therefore cannot stand and will be dismissed for failure to state a claim.

The disposition of Mr. West's claim challenging the fact of his disciplinary segregation does not necessarily resolve his claim that he has a right to receive walking assistance from segregation to the general population, which, according to him, would clear the way for his return to the population. That is because his invocation of that "right"

does not imply that his conviction on the disciplinary charges was invalid. Therefore, I will further examine this claim.

The plaintiff has not cited the constitutional provision under which he believes this court should order that he be given walking assistance, but three principles are arguably relevant. First, Mr. West might argue that the defendants' failure to give him walking assistance to the general population is in violation of his due process rights given to him by the Fourteenth Amendment to the United States Constitution. Second, he may be attempting to state a claim under the Eighth Amendment's prohibition on cruel and unusual punishment. Third, the plaintiff may believe that the defendants refusal to help him walk from segregation to the population is unconstitutional retaliation, for his frequent complaints about his medical condition.

That the plaintiff is not given assistance to go to the general population area of WCI is not in and of itself a violation of his due process rights under the Fourteenth Amendment. He has no liberty interest in being confined in a specific prison, or even a specific part of a certain prison. *See Sandin v. Conner,* 515 U.S. 472, 483–85, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Higgason v. Farley,* 83 F.3d 807, 809 (7th Cir.1996) ("The Due Process Clause itself does not create a right for prisoners to leave the area around their cells, to visit other prisoners, or not to be subjected to lockdowns."); *Smith v. Shettle,* 946 F.2d 1250, 1252 (7th Cir.1991) ("[A] prisoner has no natural liberty to mingle with the general prison population.").

The United States Supreme Court recently said that in order to succeed on a due process claim that challenges the manner in which the prisoner is confined, a plaintiff has to show that the alleged freedom from restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. Other than his frequent allegation that he is confined in segregation because of his inability to walk, Mr. West tells the court very little about why his current confinement is work-

ing a hardship on him that is any different than what he would experience in any other section of WCI. He does say that he is "suffering irreparable harm in the form of mental pain and suffering every day I'm in segregation." Under 42 U.S.C. § 1997e(e), though, the plaintiff would be unable to recover for this emotional distress unless he first suffered a physical injury that was a result of being confined in segregation, rather than in the general population. He has made no such allegation, and therefore could not recover for this alleged emotional distress. *See also Babcock v. White,* 102 F.3d 267, 272 (7th Cir.1996) (stating that the plaintiff's "claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities"). The plaintiff may very well receive significantly less privileges than he may otherwise receive, but as the court of appeals has noted, reductions in privileges "simply do not impose 'atypical and significant hardship.'" *Higgason,* 83 F.3d at 809. Because he has not shown such hardship, he cannot succeed on a due process claim.

■ In order to prove that the defendants failure to help him walk to the general population area is a violation of his Eighth Amendment right to be free from cruel and unusual punishment, the plaintiff must show that prison officials have failed to provide humane conditions in the segregation area. While prison officials do have a duty to provide "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates,'" the constitution "'does not mandate comfortable prisons.'" *Farmer,* 511 U.S. at 832, 114 S.Ct. at 1976 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984) and *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400–01, 69 L.Ed.2d 59 (1981)).

■ Mr. West must therefore make two showings. The first requirement is objective; it asks if the alleged deprivation is sufficiently serious that it resulted in the "denial of the 'minimal civilized measure of life's necessities.'" *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399–2400). The second

question, which is subjective, asks whether the official acted with the requisite culpable state of mind, defined as "deliberately indifferent." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1979. Specifically, the defendants cannot be liable unless they "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. The plaintiff, however, need not prove that the defendant intended or believed that the alleged harm would happen; the test is subjective recklessness. *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997).

As mentioned in the above discussion of Mr. West's due process claim, he makes very little argument that the conditions of his confinement in segregation are any worse than they would be in the general population. Although he does allege in his complaint that at one time, while he was incarcerated at a different institution, some of the defendants refused to help him walk, denying him the ability to reach his food and use the restrooms, he does not now argue that he is not receiving food. In his most recent brief, though, he does alleges that the defendants have refused him all of his showers and recreation. In support of these allegations, the plaintiff has provided the affidavits of two other inmates at WCI.

■ It is not cruel and unusual punishment for the defendants simply to have put the plaintiff in disciplinary segregation. *See Bono v. Saxbe,* 620 F.2d 609, 613–14 (7th Cir.1980) (analyzing prisoners' claims that their confinement in segregation was in violation of the Eighth Amendment and finding that because they did not argue, among other things, that "access to medical care, bedding or heating was insufficient or that the nutritional value of the food was inadequate," the indefinite nature of their confinement was not a violation of the constitution). If the plaintiff's most recent claims of complete denial of recreation and showers because of his failure to walk were true, however, he may

be entitled to relief. *Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir.1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."). The government should have an opportunity to respond to these claims before the court decides whether Mr. West should be given relief. *See Antonelli,* 81 F.3d at 1432 ("If extraordinary circumstances require such restrictions, the government will no doubt raise them in due course."). The defendants will have ten days from the date of this decision and order to respond to these claims.

■ That leaves a claim that the defendants have put Mr. West in segregation as retaliation for his repeated requests for medical attention and walking assistance. If a prisoner were disciplined solely because of his requests for proper medical treatment, it would surely be a constitutional violation. If the plaintiff did intend to make this claim, though, he has brought forth nothing to show that the defendants do not have a sincere belief that he is able to walk and that his conduct merits the discipline. It would be improvident for the court to find that the plaintiff has some likelihood of succeeding. The plaintiff is reminded that my disposition of his request for injunctive relief does not dispose of his case. He has brought forth many claims that have not been addressed here and that are not before the court.

Therefore, IT IS ORDERED that the plaintiff's motion for injunctive relief, requesting that he be given a full neurological exam, that he be moved from punitive segregation to the general population, and that he be given "disciplinary immunity," be and hereby is denied.

IT IS ALSO ORDERED that the plaintiff's claims challenging the defendants' findings of misconduct be and hereby is dismissed, without prejudice.

IT IS FURTHER ORDERED THAT the defendants be and hereby are directed to serve and file, if they intend to do so, a response to the plaintiff's claim that he is not receiving any recreation or showers because of his inability to walk, within ten days of the date of this decision and order.