Andrew J. BIGBEE, Petitioner,

v.

Michael K. NALLEY, Regional Director, Federal Bureau of Prisons, North Central Region, Kansas City, Kansas; Ricardo Martinez, Warden, Federal Correctional Institution, Oxford, Wisconsin; Mr. Sproul, Unit Manager, Federal Correctional Institution, Oxford, Wisconsin; Mr. Dave Benson, Recreation Specialist, Federal Correctional Institution, Oxford, Wisconsin; R.B. Cloutier, Supervisor of Recreation, Federal Correctional Institution, Oxford, Wisconsin; and John J. Shook, Assistant Warden, I & E, Federal Correctional Institution, Oxford, Wisconsin, Respondents.

No. 07–C–71–C.

United States District Court,
W.D. Wisconsin.

April 3, 2007.

Erik Peterson, U.S. Attorney, W.D. of Wisconsin, Madison, WI, for Respondents.

## ORDER

CRABB, District Judge.

This is a proposed civil action for monetary, injunctive and declaratory relief, brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), 42 U.S.C. §§ 1985 and 1986, 5 U.S.C. § 702, 18 U.S.C. 4042 and 28 U.S.C. § 1331. Petitioner, who was incarcerated at the Federal Correctional Institution in Oxford, Wisconsin at the time he filed his proposed complaint, asks for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915. From the financial affidavit petitioner has given the court, I conclude that petitioner is unable to prepay the full fees and costs of starting this lawsuit. Petitioner has paid

the initial partial payment required under § 1915(b)(1).

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. This court will not dismiss petitioner's case on its own motion for lack of administrative exhaustion, but if respondents believe that petitioner has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Massey v. Helman,* 196 F.3d 727 (7th Cir. 1999); *see also Perez v. Wisconsin Department of Corrections,* 182 F.3d 532 (7th Cir.1999).

In his complaint and attached materials, petitioner alleges the following facts.

### ALLEGATIONS OF FACT

On June 18, 2006, plaintiff was placed in the special housing unit at the Federal Correctional Institution in Oxford, Wisconsin after he made allegations regarding staff misconduct. On July 7, 2006, while he remained housed in the special housing unit, plaintiff received an incident report for "Possession of Anything Unauthorized." In the report, "L. Givens" states that

> While conducting a shakedown of inmate Bigbee's assigned hobby craft locker

(the locker had his lock on it as well) I discovered 15 books of stamps ($148.00 value).

> Only hobby craft items are permitted in the hobby craft lockers, and this is an excessive amount of stamps per policy. The stamps were delivered to the Lt.'s office upon their discovery along with this incident report.

The report contained inaccuracies. Petitioner's property had been left in an unsecured locker in a common hobby craft area while he was in the special housing unit.

On July 12, 2006, respondent Sproul found petitioner guilty of the violation described in the incident report, even though petitioner explained that the report was inaccurate and that his locker had remained unsecured for 19 days and no inventory had been taken immediately when petitioner was transferred to the special housing unit. Petitioner was sanctioned for the rule violation and his phone use and commissary privileges were restricted. However, petitioner was still able to buy stamps from the commissary. Petitioner appealed respondent Sproul's decision to respondent Martinez, respondent Nalley and the Bureau of Prison's Central Office. All three denied his appeal.

Also on July 12, 2006, petitioner was released from the special housing unit. No one had questioned him about his "allegations of misconduct by staff." At 8:39 p.m. on July 13, 2006, petitioner attempted to retrieve his property from the special housing unit. At that time, a property officer told petitioner that his hobby craft materials had been confiscated, as he was no longer in the program. Petitioner approached respondent Cloutier to ask him about this. Respondent Cloutier told petitioner that he was being "kicked out of the program for having stamps in [his] locker, which violates Oxford's Code of Conduct." Petitioner informed respondent Cloutier

that he had already been disciplined by the unit disciplinary committee for that violation.

The next morning, petitioner spoke with respondent Cloutier again about his participation in the hobby crafts program. When petitioner asked respondent Cloutier whether he would have to "file," respondent Cloutier asked whether petitioner had been in the program without signing a code of conduct. Petitioner stated that it was "staff's responsibility to have me sign one." Respondent Cloutier might be able to tell petitioner by July 17, 2006 whether he would be able to continue his participation in the program. Petitioner spoke to respondent Cloutier on July 17, 2006 and respondent Cloutier told him that he had been kicked out of the hobby crafts program. On July 20, 2006, petitioner received a memorandum from respondent Shook, in which he notified petitioner officially that he had been suspended from the hobby crafts program. Petitioner appealed this decision to respondents Martinez and Nalley. Both denied his appeal.

Because he had not received an answer regarding the resolution of his incident report, petitioner requested an extension of time to file his appeal regarding his suspension from the hobby crafts program with "Washington." The request was denied. (Petitioner believed that the resolution of his incident report and his suspension from the hobby crafts program were indicative of a pattern of staff misconduct and thought the appeals should be resolved together.) Petitioner received "the Region's" response to his appeal regarding his incident report on October 10, 2006. By the time petitioner appealed the denial of his appeal regarding his suspension from the hobby crafts program on November 9, 2006, "Washington" determined that his appeal was untimely.

As a result of his suspension from the hobby crafts program, petitioner has been unable to finish more than 175 leather projects on which he had been working. Petitioner estimates that the "handmade one-off custom projects" are worth $30,000. Petitioner intends to open a leather shop when he is released.

On July 16, 2006, respondent Benson told petitioner that he was banned from the softball league for the remainder of the season because "he searched [petitioner's] leather craft locker and found softball glove making material in there." Respondent Benson stated that he would provide petitioner with a memorandum regarding his suspension, but he did not do so. Petitioner appealed the suspension to respondent Martinez, who indicated that an investigation had been conducted and that petitioner had been suspended from softball as a result of that investigation. Petitioner appealed this decision to respondent Nalley and "Washington." Respondent Nalley provided petitioner with the same response as respondent Martinez and "Washington" did not answer petitioner's request. (It is not clear what petitioner's request was, but I will assume that he asked for an explanation for his suspension from the softball league.)

On July 30, 2006, recreation specialist Gary Thompson authorized petitioner to mail abandoned art out of the institution. Petitioner sealed the package, affixed postage and an address of an approved visitor and placed the package on a cart to be sent to the mail room. Respondent Benson opened the package and removed an enclosed drawing, which had been abandoned by Mike Terrell, another inmate. Respondent Benson called petitioner and Terrell to his office to question them about the drawing. Terrell said that he had spilled coffee on it and that petitioner must have "grabbed it off the top of the trash can."

That evening, respondent Benson wrote an incident report for "Possession of any-

thing not authorized for retention or receipt by an inmate, and not issued to him through regular channels." When petitioner spoke with Thompson about this the next morning, Thompson said he "couldn't believe it." Later that afternoon, Thompson spoke to petitioner again and told him that respondent Cloutier demanded that Thompson write petitioner an incident report, which Thompson refused to do. However, before Thompson left that day, he was called to the lieutenant's office and forced to sign an incident report against petitioner that had been written by another prison official.

On August 4, 2006, petitioner was brought before the unit disciplinary committee for a hearing regarding the July 31, 2006 incident report. Respondent Sproul stated that the hearing was delayed from August 2, 2006 because of a staff shortage. However, respondent Sproul and Mr. Phieffer worked on August 1, 2 and 3. The unit disciplinary committee did not fully investigate the facts petitioner presented at the meeting. Petitioner appealed the decision of the unit disciplinary committee to respondents Martinez and Nalley, who denied his appeal. (Petitioner does not provide the result of the unit disciplinary committee hearing; however, because petitioner appealed the decision, I presume that his incident report was upheld. Petitioner refers also to a second appeal, which was not answered by January 9, 2007, the date a reply was due. It is not clear whether the subject matter of this appeal is the same.)

In April 2003, petitioner was indicted for one count of marijuana possession. The charges were dropped on July 16, 2003 "because of misconduct by the staff members involved in the so-called bust and investigation." Since that time, prison staff members "have repeatedly tried to get" to petitioner by "falsely accusing [him] of violating various different rules, and going outside the proper procedure to sanction [him] for these so-called violations."

## DISCUSSION

### A. Due Process

■ Petitioner contends that defendants violated his due process rights by suspending him from the hobby crafts program and the softball league and by failing to hold disciplinary hearings on time. The Fifth Amendment protects petitioner from being deprived of life, liberty or property without due process of law by the federal government. *Caldwell v. Miller*, 790 F.2d 589, 602 (7th Cir.1986). However, before he is entitled to Fifth Amendment due process protections, petitioner must have a protected liberty or property interest at stake. *Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir.2003).

In *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that liberty interests "will be generally limited to freedom from restraint which ... imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In the prison context, these protected liberty interests are essentially limited to the loss of good time credits or placement for an indeterminate period of time in one of this country's "supermax" prisons. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). The Court of Appeals for the Seventh Circuit has held repeatedly that prisoners do not have a liberty interest in rehabilitative or educational programs. *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir.2000) (no liberty interest in rehabilitation program for sexual offenders); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir.1996) (no liberty interest in educational programs, even where partic-

ipation might lead to accrual of good time credits).

Put simply, there is no plausible argument that petitioner had a protected liberty interest in remaining in the hobby crafts program or the softball league at the Federal Correctional Institution or in receiving associated disciplinary hearings within a specified amount of time. Therefore, because petitioner had no liberty interest at stake, he was not entitled to Fifth Amendment due process protections and he will be denied leave to proceed on his due process claims.

### B. *Retaliation*

▮ Petitioner contends that his "First, Fifth and Fourteenth amendment rights to redress wrongs that have been done to him were violated by the defendants when they constantly harassed him for filing grievances etc." I construe this as a claim that respondents retaliated against petitioner for exercising his First Amendment rights. A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right may be liable to the prisoner for damages. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996). The official's action need not independently violate the Constitution; otherwise lawful action "taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000); *see also Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir.2000). Prison officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or for having utilized available grievance procedures. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

▮ To state a claim for retaliation, a petitioner need not allege a chronology of events from which retaliation could be plausibly inferred. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002). However, he must allege sufficient facts to put the respondents on notice of the claim so that they can file an answer. *Id.* A petitioner satisfies this minimal requirement when he specifies the suit or complaint he filed and the act of retaliation. *Id.*

From petitioner's complaint, it is not clear (1) what specific grievances he filed for which he was retaliated against; (2) which respondents he contends engaged in retaliation; and (3) what specific acts he contends were retaliatory in nature. Instead, he appears to allege that all of the behavior described in his complaint was intended to harass him and was undertaken in retaliation for his filing "grievances etc." Even under the liberal pleading standards of Fed. R. Civ. Pro. 8, petitioner's allegations are insufficient to put respondents on notice of his claims so they can file an answer. From the facts alleged in petitioner's complaint, it appears that he did file several grievances, as well as a prior lawsuit in this court. Perhaps he intended to claim that these grievances or his prior lawsuit formed the basis for retaliation.

In *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir.2003), the court of appeals held that district courts may call on the plaintiff to provide additional allegations in situations like this one, in which the facts alleged are so general or sparse that it is difficult to determine whether the plaintiff has a viable claim. I will give petitioner an opportunity to explain his allegations. In his response, petitioner should state (1) what specific grievances he filed for which he was retaliated against; (2) which respondents he contends engaged in retaliation; and (3) what specific acts he contends were retaliatory in nature. If, by April 19, petitioner does not file a supplement to his complaint containing this information, I will assume that he does not wish

to proceed with his retaliation claims against respondents.

█ Finally, when filing his response, petitioner should be aware that the prosecutor's withdrawal of drug possession charges against petitioner in July 2003 was not "an exercise of a constitutional right" by petitioner and therefore, he will not be granted leave to proceed on a claim for actions he believes were taken in retaliation for the withdrawal.

### C. Conspiracy Under 42 U.S.C. §§ 1985, 1986

█ Petitioner contends that respondents violated 42 U.S.C. §§ 1985 and 1986 by engaging in a conspiracy to interfere with his civil rights. He does not specify what the alleged conspiracy entailed or which provision of § 1985 he believes was violated. The only portions of § 1985 that petitioner could conceivably invoke are the second clause of § 1985(2) or § 1985(3), both of which cover general equal protection violations. Section 1985(1) applies to violations of rights of United States employees and the first clause of § 1985(2) applies to violations of rights during court proceedings. The second clause of § 1985(2) and § 1985(3) both require proof of a racial or otherwise class-based discriminatory animus behind the defendants' actions. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir.2000).

Petitioner did not allege any facts regarding his race or class membership or facts suggesting that actions were taken against him because of his race or class. Moreover, to state a claim under § 1985, petitioner would have to allege facts suggesting that a conspiracy occurred (under § 1985 a conspiracy requires two or more individuals acting in concert to deprive

petitioner of his rights). Petitioner has alleged nothing from which an inference may be drawn that two or more respondents acted in concert to deprive him of any constitutional or civil right. Therefore, I will deny petitioner leave to proceed on his § 1985 claim.

█ Petitioner further contends that respondents violated 42 U.S.C. § 1986 by failing to prevent the alleged conspiracy to violate his due process and First Amendment rights. 42 U.S.C. § 1986 creates a cause of action against a person who neglects or refuses to stop a conspiracy to violate the civil rights of a member of a protected class. There is no independent liability under § 1986, instead "liability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986." *Grimes v. Smith*, 776 F.2d 1359, 1363 n. 4. (7th Cir. 1985). Because petitioner's complaint fails to state a § 1985(3) claim, it necessarily fails to state a § 1986 claim.

### D. Violations of Prison Regulations

█ Finally, petitioner contends that respondents violated 5 U.S.C. § 702. This section of the Administrative Procedures Act allows persons who are adversely affected by agency action to seek judicial review. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). Petitioner's theory of liability is not entirely clear from his complaint, but he does allege that (1) his suspension from the hobby crafts program violated 28 C.F.R. § 541.11; (2) respondent Benson's refusal to allow him to send Mike Terrell's abandoned drawing out of the institution violated 28 C.F.R. § 544.35(c)(2); and (3) respondents' failure to provide him with a

disciplinary hearing for over 72 hours until August 4, 2006 and failure to provide him with an incident report within 24 hours until July 7, 2006 violated "Program Statement 5270.07." Thus, I presume that he is attempting to seek judicial review of these actions pursuant to the Administrative Procedures Act. (For the purpose of this decision, I will make the rather unlikely assumption that alleged violations of "Program Statements" are final agency actions subject to judicial review under 5 U.S.C. § 704. Agency action is not "final" for purposes of § 704 unless "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros,* 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). It is not clear from petitioner's complaint whether he exhausted his administrative remedies with respect to these specific claims.)

Whatever the merits of petitioner's claims might be, he will be denied leave to proceed under the Administrative Procedures Act because the remedies he seeks are not available. In his prayer for relief, petitioner requests $50,000 in compensatory damages against each respondent, issuance of an injunction requiring "the defendants to comply with all program statements set-forth by the B.O.P. and Congress in 28 C.F.R." and entry of a declaratory judgment that "the Defendants acts described and complained of above violated Plaintiff's rights under the United States Constitution and the Federal Statute."

■ I turn first to petitioner's requests for injunctive and declaratory relief. In order to satisfy Article III's "case or controversy" requirement, petitioner must allege facts suggesting either that the injuries he complains of are continuing or that he is under the immediate threat that the injuries complained of will be repeated. *Sierakowski v. Ryan,* 223 F.3d 440, 444 (7th Cir.2000) ("[I]n order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury."). As the Supreme Court explained in *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 102, 103 S.Ct. 1660. This rule applies to claims for declaratory as well as injunctive relief. *See Robinson v. City of Chicago,* 868 F.2d 959, 966 n. 5 (7th Cir.1989) ("The declaratory relief statute is not an independent basis of jurisdiction and requires an 'actual controversy' "). Finally, in the prison context " 'if a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.' " *Higgason,* 83 F.3d at 811 (quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir.1988)).

■ Petitioner has informed the court that he is no longer at the Federal Correctional Institution in Oxford, Wisconsin and the Bureau of Prisons inmate locator indicates that he can be reached through the Community Corrections Management office in Minneapolis, Minnesota. Petitioner's allegations involve individual incidents of respondents' alleged failure to comply with federal regulations. There is no immediate threat that he is likely to suffer an injury arising out of the same circumstances again, or any indication that he may be returned to the prison at Oxford. Therefore, petitioner will be denied leave to proceed on his requests for declaratory or injunctive relief because they are moot.

■ This leaves petitioner's prayer for relief in the form of money damages. It is beyond contention that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *see also United States v. Shaw,* 309 U.S. 495, 500–01, 60 S.Ct. 659, 84 L.Ed. 888 (1940) ("without specific statutory consent, no suit may be brought against the United States"). Although petitioner has not officially named the United States as a defendant in the action, "the bar of sovereign immunity cannot be avoided simply by naming officers and employees of the United States as defendants." *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 115 (6th Cir.1988) (citing *Hutchinson v. United States,* 677 F.2d 1322, 1327 (9th Cir.1982)). *See also Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). The text of the Administrative Procedures Act itself specifies that it provides for actions "in a court of the United States seeking relief *other than money damages* ...." 5 U.S.C. § 702 (emphasis added). Because Congress has not waived sovereign immunity for claims for money damages under § 702, petitioner's claim for money damages against respondents for violating 28 C.F.R. §§ 541.11 and 544.35 and "Program Statement 5270.07" must be dismissed as well.

### E. *Violation of 18 U.S.C. § 4042*

Finally, petitioner alleges that respondents violated 18 U.S.C. § 4042, which establishes the duties of the Bureau of Prisons. He contends that "the defendants failure to follow 18 U.S.C. § 4042 violated plaintiff's right to be free from unnecessary harassment and the proper care set forth in said statute." Section 4042(a) provides that

(a) In general. The Bureau of Prisons, under the direction of the Attorney General, shall—

(1) have charge of the management and regulation of all Federal penal and correctional institutions;

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

(4) provide technical assistance to State and local governments in the improvement of their correctional systems; and

(5) provide notice of release of prisoners in accordance with subsections (b) and (c).

■ Again, petitioner provides no detail regarding the specific acts that he believes violated respondents' duty of care under 18 U.S.C. § 4042. However, even if petitioner had provided specific detail, he would be denied leave to proceed with this claim. In *Calderon v. United States,* the Court of Appeals for the Seventh Circuit found that 18 U.S.C. § 4042 establishes a discretionary function. *Id.* ("While it is true that [18 U.S.C. § 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty."). The court of appeals held that it lacked jurisdiction to hear plaintiff's Federal Tort Claims Act claim, in which he alleged a violation of 18 U.S.C. § 4042's duty of care and requested monetary damages, because it found that Congress had not waived sovereign immunity in these circumstances. Therefore, petitioner will be denied leave to proceed with his claims for monetary relief; as

discussed above, any claims for injunctive or monetary relief are moot because petitioner is no longer at the Federal Correctional Institution in Oxford, Wisconsin.

## ORDER

IT IS ORDERED that

1. Petitioner Andrew Bigbee is DENIED leave to proceed on his claims under (1) the due process clause of the United States Constitution; (2) 42 U.S.C. §§ 1985, 1986; (3) 5 U.S.C. § 702; and (4) 18 U.S.C. § 4042 against respondents Michael K. Nalley, Ricardo Martinez, Mr. Sproul, Dave Benson, R.B. Cloutier and John J. Shook.

2. The decision whether to grant petitioner leave to proceed is STAYED with respect to petitioner's claim that respondents violated his First Amendment rights by retaliating against him for engaging in constitutionally protected activity. Petitioner may have until April 26, 2007, in which to file an addendum to his complaint that includes allegations describing (1) what specific grievances he filed for which he was retaliated against; (2) which respondents he contends engaged in retaliation; and (3) what specific acts he contends were retaliatory in nature. If, by April 26, petitioner does not file a supplement to his complaint setting for the requested information, I will assume that petitioner does not wish to pursue this claim against respondents and I will dismiss his case.